UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TROY MOORE

                  Plaintiff,

        vs.                                          **AMENDED COMPLAINT**

                                                **22 CV 694 (ENV)(SJB)**

THE CITY OF NEW YORK, a municipal entity,
POLICE OFFICER SASHA CORDOBA, POLICE
OFFICER KEVIN DESORMEAU, POLICE OFFICERS
JOHN DOE and RICHARD ROE (names and number of
whom are unknown at present), and other unidentified
members of the New York City Police Department,
New York City Police Supervisors
and Commanders RICHARD ROEs 1-50,

                                              **JURY TRIAL
DEMANDED**

                  Defendants
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the Plaintiff, TROY MOORE, seeks relief for the violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its Fourth, and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  The Defendants, including Kevin Desormeau and Sasha Cordoba, now former members of the New York City Police Department (hereinafter "NYPD"), falsely accused and arrested and maliciously prosecuted Plaintiff on felony narcotics charges and other related charges, resulting in his wrongful incarceration and other significant collateral consequences.  They did so knowing that he was innocent, and in turn, framed him for crimes he did not commit by fabricating and concealing evidence.

2.      Defendant City of New York (hereinafter "Defendant CITY") is liable for the

1

violation of Plaintiff's constitutional rights as Plaintiff's injuries were caused by the policies, practices and customs of the NYPD, an agency of Defendant CITY.  Employees and agents of the NYPD, including the individual Defendants in particular, obtained criminal convictions in violation of innocent people's constitutional rights to Due Process under the 14th Amendment to the United States Constitution.

3.      For over a decade, the NYPD employed Defendants Sasha Cordoba and Kevin Desormeau.  While employed by the NYPD, Defendants Cordoba and Desormeau conspired among themselves and with the other Defendant Officers to violate the constitutional rights of innocent people and frame them for crimes they did not commit by manufacturing, fabricating and concealing evidence.

4.      As a result of the polices and practices of the NYPD described below, Defendants Cordoba and Desormeau framed over fifty innocent people.

5.      Following an investigation, in 2018, Defendants Cordoba and Desormeau were indicted in two different jurisdictions, Queens and Manhattan for fabricating evidence, framing innocent people and committing perjury.  Both were convicted and sentenced.  They were terminated by the NYPD.

6.      On November 8, 2021, Queens District Attorney Melinda Katz, following the review by her office's Conviction Integrity Unit (hereinafter "CIU"), sought to vacate convictions in fifty-four cases in which Defendants Cordoba and/or Desormeau were the essential witnesses because of their history of "serious misconduct."

7.      In making this decision, District Attorney Katz stated, "We cannot stand behind a criminal conviction where the essential law enforcement witness has been convicted of crimes which irreparably impair their credibility.  Vacating and dismissing these cases is both

constitutionally required and necessary to ensure public confidence in our justice system."

8.    As a result of the aforementioned constitutional violations, Plaintiff was wrongfully incarcerated and suffered emotional, mental and psychological pain and suffering because of the actions by the Defendants

## JURISDICTION

9.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution.

10.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4) and the aforementioned statutory and constitutional provisions.

## VENUE

11.    Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

12.    Plaintiff is and was at all times relevant herein a resident of the State of New York.

13.    New York City Police Officer Sasha Cordoba is and was at all relevant times herein an officer, employee and agent of the NYPD.  On the dates identified herein, she was assigned to the Queens Gang Unit.  Following her convictions for perjury, making false statements and official misconduct in 2018 in which she fabricated facts related to a 2014 arrest, Defendant Cordoba was terminated from the NYPD.  She is being sued in her individual capacity.

14.    New York City Police Officer Kevin Desormeau is and was at all relevant times herein an officer, employee and agent of the NYPD.  On the dates identified herein, he was

assigned to the Queens Gang Unit.  Following his convictions for making false statements and official misconduct in 2018 in which he fabricated facts related to multiple arrests, Defendant Desormeau was terminated from the NYPD.  He is being sued in his individual capacity.

15.     New York City Police Officers JOHN DOE and RICHARD ROE (names and number of whom are unknown at present), and other unidentified members of the NYPD, are and were at all times relevant herein officers, employees and agents of the NYPD.  Officers JOHN DOE and RICHARD ROE are being sued herein in their individual capacities for their participation in the malicious prosecution against Plaintiff.

16.     Each and all of the acts of the Defendants alleged herein were undertaken by said Defendants while acting in the course and scope of their duties and functions as agents, employees, and officers of Defendant CITY and/or the NYPD when engaging in the conduct described herein.

17.     At all times relevant herein, Defendants acted for and on behalf of Defendant CITY and/or the NYPD in furtherance of their employment by Defendant CITY, with the power and authority vested in them as officers, agents and employees of Defendant CITY and/or the NYPD and/or incidentally to the lawful pursuit of their duties as officers, employees and agents of Defendant CITY and/or the NYPD.

18.     Defendant CITY is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

## STATEMENT OF FACTS

### Desormeau and Cordoba's Pattern of Misconduct

19.     Defendants Desormeau and Cordoba have a history of engaging in precisely the kind of police misconduct that occurred in Plaintiff's case, including fabricating and concealing evidence in the course of falsely arresting and maliciously prosecuting innocent persons.

20.     In addition to the cases in which Plaintiff has been exonerated, there are dozens of other identified cases in which Desormeau and Cordoba engaged in serious investigative misconduct.

21.     For example, in 2014, Roosevelt McCoy was strip-searched and arrested by Defendants Desormeau and Cordoba, for drug possession and was held on Riker's Island for over fifty days until all criminal charges were dismissed. In McCoy's civil suit against the City, McCoy alleged that Desormeau and Cordoba fabricated a variety of evidence in their efforts to initiate criminal proceedings against him, including an arrest report and property vouchers. The City filed crossclaims against Desormeau and Cordoba seeking indemnification for their actions. In November 2016, the City of New York provided McCoy with an Offer of Judgment for $500,000, and McCoy settled the remaining claims against the officers in August 2017.

22.     In 2015, Defendant Desormeau arrested Arthur West for felony charges in connection with a firearm allegedly found in a locked box in his uncle's bedroom. West was held on Riker's Island until all charges were dismissed. In West's civil suit, West alleged that Desormeau and other NYPD officers engaged in a conspiracy to violate West's rights by arresting and detaining him without probable cause. In 2016, West settled his case against Desormeau certain NYPD officers, and the City.

23.     In 2013, Anthony Lopez was arrested by Defendants Cordoba, Desormeau, and

other NYPD officers for criminal possession of a firearm. In Lopez's civil suit against the officers and the City, Lopez alleged that the officers, including Desormeau and Cordoba, planted false evidence and provided perjured testimony to obtain a search warrant of his home. The case was settled in 2018.

24.    In 2014, Trevor Lucas was arrested by Defendant Desormeau and other officers for conspiracy to commit murder. Lucas was ultimately convicted of this crime and was incarcerated for over fifty months until the Appellate Division of the Second Department unanimously overturned the conviction. Lucas alleged in his civil suit that the charges and conviction were the result of the officer defendants, including Desormeau, fabricated charging documents containing false statements. The parties settled in October 2020.

25.    In 2013, Ronald Fourcand was arrested by Defendant Cordoba and other NYPD officers after they entered his home without a warrant. In Fourcand's civil suit, Fourcand alleged that Cordoba lacked probable cause to arrest him. The case was settled in October 2016.

26.    On or around September 9, 2014, Taron Parkinson was lawfully driving his car when officers, including Defendants Cordoba and Desormeau, knowingly seized Parkinson without probable cause.  After Parkinson was seized, officers, including Defendant Cordoba, searched Parkinson's car and Defendant Cordoba falsely claimed to find a gun.  Officers knew Defendant Cordoba's claim was false and conspired to frame Parkinson. Officers used Defendant Cordoba's false claim to arrest Parkinson and charge him with criminal possession of a weapon, a gun, in the second degree.  Parkinson's charge was based exclusively on false evidence officers fabricated and their suppression of evidence of their misconduct from the prosecutor and the defense.  But for the officers' misconduct, Parkinson would have never been arrested or prosecuted.  Due to the officers' misdeeds, Parkinson faced 15 years in

6

prison. Although Parkinson consistently maintained his innocence, Parkinson feared that a

factfinder would not believe his word over the officers'.  As a result, on or around September

2014, Parkinson pled guilty to a crime he did not commit and was forced to serve three years in

prison and four years on supervised parole.  In 2021, the court vacated Parkinson's conviction and

the Queens District Attorney's Office dismissed the charges.

      27.     On or around the evening of March 10, 2015, Michael Suber was sitting in the

front passenger side of a Dodge having a conversation with his friend in the driver's seat.  When

Suber exited the vehicle he was immediately chased by multiple officers, including Officer

Desormeau, and arrested.  In arresting officer Desormeau's crime report of the incident,

Desormeau falsely claimed that he had witnessed Suber effectuate a drug deal prior to entering

the Dodge.  Officer Desormeau further falsely claimed that while sitting in the Dodge, his

witnessed Suber place another bag of cocaine in his pants.   As a result, Suber was indicted for

criminal possession of a controlled substance with intent to sell, for which he pled guilty. Suber

served time in prison and time on supervised release.  In 2021, the court vacated Suber's

conviction and the Queens District Attorney's Office dismissed the charges.

      28.     On or around January 13, 2015, Audrey Brown was sitting in a parked car with

two friends. Brown and her friends were not committing any crimes or behaving in an unlawful

manner.  Nevertheless, officers, including Defendants Cordoba and Desormeau, approached her

car and ordered Brown and her friends out of the car.  After Plaintiff Brown and her friends

complied with this order, officers searched Browns car. During the search, Defendant Cordoba

falsely claimed she found cocaine in the car.  Officers knew this claim was false, but nonetheless,

the officers knowingly arrested Brown and her friends without probable cause.  Brown was

falsely charged with criminal possession of cocaine.  The officers knew there was no evidence to

support this charge, so the officers, including Defendant Cordoba and Desormeau, conspired to frame Brown and her friends. In furtherance of this conspiracy, they fabricated false evidence and presented this false evidence to the prosecutor to cause Brown's prosecution. But for the officers' misdeeds, Brown would not have been prosecuted. Brown consistently maintained her innocence and wanted to fight her case, but officers coerced Brown into pleading guilty by threatening to continue to detain her friend on the false charges. Even though she had nothing wrong, Brown pled guilty to criminal possession of a controlled substance—a crime she did not commit—out of concern for the continued incarceration of her friend. On or around January 30, 2015, Brown was convicted for criminal possession of cocaine and sentenced to time served and a six-month suspended license. In 2021, the court vacated Brown's conviction and the Queens District Attorney's Office dismissed the charges.

29.     On or about February 1, 2014, Davon Armstrong was lawfully driving when officers, including Defendant Cordoba, knowingly seized Armstrong without probable cause. After Armstrong was seized without probable cause, officers, including Defendant Cordoba, searched Armstrong's car. During the search, Defendant Cordoba falsely claimed she found two bags of cannabis and a "gravity" knife. Officers knew this claim was false, but nonetheless, arrested Armstrong without probable cause. Further compounding their misconduct, the officers charged Armstrong with disorderly conduct. The officers again knew there was no evidence to support this charge, so the officers, including Defendant Cordoba, conspired to frame Armstrong and fabricated false evidence. Officers presented this false evidence to the prosecutor to cause Armstrong's prosecution and suppressed evidence of their misconduct from prosecutor and defense. But for the officers' misconduct, Armstrong would not have been prosecuted. Although Armstrong consistently maintained his innocence, he feared that fighting to prove his innocence

would result in his losing his job and his ability to support his family.  As a result, Armstrong agreed to plead guilty to disorderly conduct, a crime he did not commit.  On or around March 2014, Armstrong was convicted and sentenced to conditional discharge.  In 2021, the court vacated Armstrong's conviction on and the Queens District Attorney's Office dismissed the charges.

30.     On or around February 14, 2014, Ramona Jaquez was lawfully waiting for her boyfriend in the lobby of her apartment complex when officers, including Defendant Cordoba, wrongfully arrested her and charged her with criminal trespassing.  Officers again knew there was no evidence to support this charge, so officers, including Defendant Cordoba, conspired to frame Jaquez and fabricated false evidence.  Officers presented this false evidence to the prosecutor to cause Jaquez's prosecution and suppressed evidence of their misconduct from prosecutor and defense.  Believing that a jury would not take her word over the officers, Jacquez pled guilty to a crime she did not commit.  On or about July 30, 2014, Jacquez was sentenced to thirty days in prison.  In 2021, the court vacated Jaquez's conviction and the Queens District Attorney's Office dismissed the charges.

31.     On or about July 10, 2014, Dennis Smith was wrongfully arrested and charged based on an illegal search of his home. Defendant Cordoba was the search warrant's affiant.  Smith was sleeping in his bedroom when officers, including Defendant Cordoba, entered into his home and knowingly seized him without probable cause.  After Smith was seized, officers, including Defendant Cordoba, searched Smith's house for narcotics. Defendants never recovered any narcotics.  During the search, Smith informed the officers that he had an unloaded antique gun, a family heirloom, inside his bedroom.  When no drugs were found, officers conspired to frame Smith and arrested him for gun possession.  On or about November 28, 2016,

Smith pled guilty to criminal possession of a firearm and was sentenced to ten days in prison and a $100 fine.  In 2021, the court vacated Smith's conviction and the Queens District Attorney's Office dismissed the charges.

32.     On or around January 29, 2015, Barry Sease-Bey was wrongfully arrested and charged based on an illegal search of a relative's home. Defendant Desormeau was the search warrant's affiant and falsely claimed that items recovered pursuant to the execution of the search warrant were Sease-Bey's.  At the time Sease-Bey was indicted, officers, including Defendant Desormeau, knew that there was no reliable evidence connecting Sease-Bey with the seized objects.  Officers, including Defendant Desormeau, were also aware that Sease-Bey's charges were premised on false and fabricated evidence.  Officers conspired to frame Sease-Bey, and in furtherance of that conspiracy, suppressed exculpatory evidence from the prosecutor and the defense.  Sease-Bey's indictment for the criminal possession of a skimmer device and forged instruments (the seized items), totaling 229 counts, was based exclusively on evidence officers fabricated and their suppression of evidence of their misconduct.  But for the officers' misdeeds, Sease-Bey would have never been arrested or prosecuted.  Due to the number of false charges, Sease-Bey faced over 15 years in custody. Believing that a jury would not take his word over the officers', Sease-Bey pled guilty to a crime he did not commit and was sentenced to a conditional discharge.  In 2021, the court vacated Sease-Bey's conviction and the Queens District Attorney's Office dismissed the charges.

33.     On or around May 1, 2013, Keith Garlin was wrongfully arrested and charged based on an illegal search of his home. Defendant Cordoba was the search warrant's affiant and falsely claimed that a gun that was recovered pursuant to the execution of the search warrant was Garlin's.  The warrant contained false and fabricated evidence. At the time the search

warrant was executed, officers, including Defendant Cordoba, knew there were false

material statements in the search warrant affidavit. But for the false and fabricated evidence

contained in Defendant Cordoba's search warrant application, Garlin would not have been

arrested or prosecuted. Officers, including Defendant Cordoba, conspired to frame

Garlin and in furtherance of that conspiracy, never disclosed to the prosecutor or the defense that

the basis for search warrant was fabricated. Because of the officers' misconduct, Garlin was

charged with attempted criminal possession of a loaded weapon. Garlin wanted to fight to prove

that the officers' had fabricated evidence against him, but he did not believe he would be able to

win the credibility war at a motion to suppress. As such, in 2016, Garlin pled guilty to attempted

criminal possession of a loaded weapon and served approximately two years in prison for a crime

he should have never been arrested for or charged with. In 2021, the court vacated Garlin's

conviction and the Queens District Attorney's Office dismissed the charges.

     34.     On or around June 7, 2014, Vaughn Payne was legally selling clothes he

designed at a free market when officers, including Defendants Cordoba and

Desormeau, raided the marketplace. Although the officers had no legal basis to seize and search

the merchants and their booths, officers, including Defendant Cordoba and Desormeau, illegally

searched Payne's booth. During the search Defendant Cordoba falsely claimed to find 30 bags of

cannabis, and Defendant Desormeau falsely claimed to find additional bags of cannabis, as well

as bags of Oxycontin and "Molly" pills. The officers knew these claims were false, but

nonetheless, knowingly arrested Payne without probable cause. Pursuant to Payne's arrest, Payne

was charged with criminal possession of a controlled substance. Officers knew there was no

evidence to support this charge, so the officers, including Defendants Desormeau and Cordoba,

conspired to frame Payne. In furtherance of that conspiracy, fabricated false evidence, presented

this false evidence to the prosecutor to cause Payne's prosecution, and suppressed evidence of their misconduct from the prosecutor and the defense.  But for the officers' misdeeds, Payne would not have been prosecuted.  Payne consistently asserted his innocence but feared a factfinder would believe the officers' word over his own at trial.  After four months of pretrial detention and facing up to an eight-year sentence, Payne pled guilty to criminal possession of a controlled substance – a crime he did not commit.  On or around June 2014, Payne was convicted of criminal possession of a controlled substance and sentenced to time-served and a six-month license suspension.  In 2021, the court vacated Payne's conviction and the Queens District Attorney's Office dismissed the charges.

35.     Given this history of misconduct and the City of New York's failure to meaningfully discipline Defendants Desormeau, Cordoba, and others, it is apparent that Defendants Desormeau and Cordoba engaged in such misconduct because they had every reason to believe that the City of New York and its police department condoned their behavior.

### Defendants' Violation of Plaintiff's Constitutional Rights

36.     On August 28, 2014, Plaintiff, a Black man, husband and father who was then 47 years old, was driving his vehicle, a white Chevrolet Buick, in the vicinity of Waltham Street and Shore Avenue in Jamaica, Queens.

37.     Plaintiff parked and exited his car to go to his cousin's house which was located at the corner of Waltham Street and Shore Avenue.

38.     While walking to his cousin's house, a friend of Plaintiff was driving and noticed Plaintiff.

39.     Plaintiff's friend drove over to Plaintiff and stopped his car.

40.     Plaintiff and his friend began to have a conversation.

41.     None of what they discussed involved criminal activity.

42.     Immediately, the Defendants Cordoba, Desormeau and other unidentified members of the NYPD (hereinafter, "the Individual Defendants") drew their guns and ordered Plaintiff to put his hands on Plaintiff's friend's vehicle.

43.     Plaintiff complied and had not been engaging in any criminal activity.

44.     The Individual Defendants searched Plaintiff and did not find any narcotics or contraband on his person.

45.     Plaintiff was handcuffed and placed under arrest without probable cause.

46.     Plaintiff was falsely accused by the Individual Defendants of possessing 6 ziplock bags of cocaine.

47.     Having no probable cause to arrest and prosecute Plaintiff, Defendants New York City Police Supervisors and Commanders Richard Roes 1-50, who were the supervising officers, reviewed, approved, and ratified the arrest of Plaintiff.

48.     Despite any evidence that Plaintiff committed a narcotics offense, Plaintiff was charged by the Queens District Attorney's Office with Criminal Possession of a Controlled Substance, a class C felony, and other related charges.

49.     In a sworn felony complaint, Defendant Cordoba, falsely accused Plaintiff of possessing 6 ziplock bags of cocaine and recovering an additional quantity of cocaine from his person.

50.     Plaintiff was arraigned, entered a plea of not guilty, and was released on his own recognizance.

51.     The Queens District Attorney's Office initially offered Plaintiff a plea with a

13

sentence of two years' incarceration and two years' post-release supervision.  Plaintiff rejected the plea offer.

52.     During the pendency of the case, the Individual Defendants falsely arrested Plaintiff a second time.

53.     In or about October 2014, Plaintiff was inside his white Chevrolet Buick, parked at the vicinity of Waltham Avenue and 107th Street in Jamaica, Queens, and eating.

54.     Two women were inside Plaintiff's vehicle, and also eating.

55.     The Individual Police Defendants, inside their marked police car, saw Plaintiff's vehicle and drove over.

56.     Upon arrival, the Individual Police Defendants ordered Plaintiff to get out of his car.

57.     Plaintiff complied.

58.     Defendant Desormeau ordered that the hood of the car be popped.

59.     One of the women inside the car popped the hood.

60.     After the hood had been popped, Defendant Desormeau stated, "we found it."

61.     Plaintiff demanded that the Individual Defendants show him what was recovered.

62.     The Individual Defendants refused.

63.     Defendant Desormeau stated to Plaintiff, "we found 6 cracks again" and "6 must be your lucky number."

64.     Plaintiff again demanded that Defendant Desormeau show him what he claimed he found.

65.     Defendant Desormeau refused.

66.     Plaintiff demanded that Defendant Desormeau contact his boss for Plaintiff to

14

speak with.

67.     Defendant Desormeau refused and stated to Plaintiff, "I'm the boss."

68.     Despite any evidence that Plaintiff or either of the women committed a narcotics offense, Plaintiff and the women were charged with drug offenses.

69.      Despite having no probable cause to arrest and prosecute Plaintiff and the women, Defendants New York City Police Supervisors and Commanders Richard Roes 1-50, who were the supervising officers, reviewed, approved, and ratified the arrest of Plaintiff and the women.

70.     Plaintiff was arraigned, entered a plea of not guilty, and was released on his own recognizance.

71.     All charges related to this incident were subsequently dismissed by the Queens District Attorney's Office.

72.     As for the initial incident, the Queens District Attorney's Office made Plaintiff a revised offer of 90 days' jail and 5 years' probation.

73.     Despite his actual innocence, because of personal circumstances, namely his wife's pregnancy, Plaintiff chose to plead guilty and resolve the case with 90 days' jail and 5 years' probation.

74.     Plaintiff lost his job and served his 90-day sentence at Rikers Island.

75.     While at Rikers Island, he was incarcerated under harsh conditions and exposed to violence.

76.     In 2015, following his release, Plaintiff was placed on 5 years' probation.

77.     In 2015, following his release, Plaintiff and his wife and five children were evicted from their home because of their inability to pay rent due to Plaintiff's incarceration and difficulty finding employment.

78.     Unable to afford housing, in 2016, Plaintiff's family relocated to North Carolina.

79.     Plaintiff remained in New York because of restrictions related to his probation.

80.     From 2016 to 2020, Plaintiff was forced to live apart from his family.

81.     Plaintiff completed 5 years' of probation.

82.     Plaintiff was gainfully employed and fully compliant with the terms of his probation.

83.     After he successfully completed probation, Plaintiff moved to North Carolina to be with his family.

84.     On June 27, 2018, Defendant Cordoba was convicted of making false statements in court documents and in court proceedings related to a 2014 arrest of an individual in Washington Heights and for conducting and illegal search of such individual.

85.     On June 27, 2018, Defendant Cordoba pleaded guilty in New York Supreme Court to one count of Perjury in the First Degree and one count of Official Misconduct.  She was sentenced to 60 days' jail.

86.     On April 19, 2018, Defendant Desormeau pleaded guilty to in New York Supreme Court to one count of Offering a False Statement Instrument for Filing in the First Degree and Official Misconduct relating the same 2014 arrest of the individual in Washington Heights.  He was sentenced to three years' probation and 10 days of community service.

87.     Defendant Desormeau also was convicted in 2018 of lying about an alleged cocaine sale in Jamaica, Queens.

88.     The Queens District Attorney's Office reviewed Plaintiff's case and determined that the Individual Defendants committed crimes and fabricated evidence against Plaintiff.

89.     On November 8, 2021, the Queens District Attorney's Office petitioned a judge to

vacate Plaintiff's conviction, along with 59 other convictions that were linked to the Individual Defendants; NYPD officers who were found to have committed crimes and fabricated evidence in cases.

<u>**Plaintiff's Injuries and Damages**</u>

90.     As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff:

(1) Suffered psychological injuries;

(2) Suffered emotional and mental anguish and pain;

(3) Was denied his state and federal constitutional rights and liberties;

(4) Was publicly shamed, disgraced, ridiculed and humiliated and suffered damage to reputation;

(5) Incurred substantial legal fees;

(6) Continues to suffer from psychological injuries, emotional and mental anguish and pain; and

(7) Incurred other items of attendant damages.

<u>**FIRST CAUSE OF ACTION**</u>

<u>**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**</u>

91.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 90 with the same force and effect as if more fully set forth at length herein.

92.     The Individual Defendants who were acting within the scope of their employment,

arrested and caused Plaintiff to be imprisoned on felony narcotics charges without probable cause in violation of Plaintiff's right to be free from an unreasonable seizure under the Fourth Amendment to the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

### Malicious Prosecution/Fourth Amendment Rights

93.     Plaintiff repeats, reiterate, and realleges each and every allegation contained in paragraphs marked 1 through 92, with the same force and effect as if more fully set forth at length herein.

94.     The acts and conduct of the Individual Defendants constitute malicious prosecution under the Fourth Amendment to the Constitution of the United States.  The Individual Police Defendants commenced and continued a criminal proceeding against Plaintiff.  There was actual malice and an absence of probable cause for the proceeding.  In addition, the proceeding terminated favorably to Plaintiff when all felony narcotics charges against Plaintiff were vacated and dismissed by the Queens District Attorney's Office on or about November 8, 2021.

## THIRD CAUSE OF ACTION

### *Monell*/42 U.S.C. 1983 Claim Against Defendant City of New York

95.     Plaintiff repeats, reiterate, and realleges each and every allegation contained in paragraphs marked 1 through 94, with the same force and effect as if more fully set forth at length herein.

96.     The violation of Plaintiff's constitutional rights and resultant injuries were directly,

proximately and substantially caused by conduct, chargeable to Defendant CITY, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested or prosecuted for alleged crimes, and the deliberate indifference by policymaking officials at the NYPD with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the Individual Defendants in this case.

97.     Prior to Plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected of criminal activity and to the risk of arresting, prosecuting, and convicting innocent people, elected not to provide police officers and detectives with minimally adequate training and supervision, and discipline.  As such, employees and agents of the NYPD, including Defendants Cordoba and Desormeau, pursued and obtained criminal convictions in violation of innocent people's constitutional rights to Due Process under the 14th Amendment to the United States Constitution.

98.     At all relevant times, members of the NYPD, including the Individual Defendants in this action, routinely manufactured evidence against innocent persons through unconstitutional means, including coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false.

99.     Consistent with the municipal policy and practice described in the preceding paragraph, employees of Defendant CITY, including the Individual Defendants, fabricated reports, witness identifications, and other evidence, which was used to wrongfully prosecute Plaintiff.

100.    The aforesaid deliberate or de facto policies, procedures, regulations, practices and customs (including the failure to properly instruct, train, supervise and discipline employees) were implemented or tolerated by policymaking officials for Defendant CITY,

including, but not limited to, then-Commissioner of the NYPD, and then-Mayor of the City of

New York, who knew:

> a)     to a moral certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

> b)     that such issues present police employees with difficult choices of the sort that instruction, training and supervision will make less difficult or that the need for further instruction, training, supervision and discipline was demonstrated by a history of police employees, such as the Individual Defendants, mishandling such situations as well as incentives that police employees have to make the wrong choice; and

> c)     that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of individuals and criminal suspects such as Plaintiff and cause constitutional injury.

101.     The aforementioned policymaking officials had the knowledge and the notice

alleged in the preceding paragraph based upon, among other circumstances:

> a)     numerous credible allegations, many substantiated, that police employees, in particular the Individual Defendants, obtained criminal convictions in violation of innocent people's constitutional rights to Due Process under the 14th Amendment to the United States Constitution;

> b)     numerous civil lawsuits, some of which resulted in substantial civil settlements, alleging that police, in particular the Individual Defendants, had falsified, exaggerated, manufactured, fabricated, concealed or withheld evidence, thereby improperly causing unlawful injuries to individuals suspected of crimes;

> c)     judicial decisions criticizing the conduct of police, in particular the Individual Defendants, that caused the deprivation of constitutional rights of individuals;

> d)     judicial decisions directly criticizing the NYPD for failing to train, supervise and discipline its police employees;

e)    the inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure on officers to pursue and obtain arrests and convictions and the powerful incentives they have to ignore, discard, fail to record, manufacture, fabricate and conceal evidence.

102.    For example, in October 1997, Chad Breland was wrongfully convicted of the burglary and robbery of Freddie Balston in Queens, New York. Breland was initially connected to the robbery primarily due to the false statement of a confidential informant. The confidential informant falsely told his handler, a NYPD detective, that Breland was involved in the Balston burglary and robbery. Breland was charged, prosecuted, and wrongfully convicted of the crimes. After being wrongfully convicted, Breland continued fighting to prove his innocence, including petitioning the Conviction Integrity Unit ("CIU") of the Queens County District Attorney's Office to reinvestigate his case. Breland and CIU's post-conviction investigation revealed that NYPD officers had suppressed from the prosecutor and the defense an exculpatory report that showed fingerprints were found at the Balston crime scene – prints that were later revealed to belong to the confidential informant who falsely stated Breland was involved in the crime. It was also revealed that the NYPD handler for the confidential informant suppressed evidence from the prosecutor and defense that he repeatedly intervened in criminal cases on the confidential informant's behalf. In 2021, Queens County Supreme Court vacated Breland's conviction and dismissed the indictment.

103.    In 2006, Shuaib O'Neill was arrested in Queens, New York, and falsely charged with criminal possession of a weapon in the second degree and criminal possession of marijuana in the fifth degree. In 2010, O'Neill was wrongfully convicted of both charges. After his wrongful conviction, O'Neill filed an appeal. The appellate court reviewed the case and found that the evidence, or lack thereof, "cast doubt on the arresting officers' credibility." In 2016,

O'Neill's conviction was vacated and the indictment against him dismissed.

104.    In 2007, Darious Peterson was arrested in Queens, New York after his car was struck by a vehicle driven by NYPD police officers. In Peterson's civil suit he alleged that during the arrest NYPD officers physically abused Peterson, causing him to break his ribs, lose consciousness, and become hospitalized. In response, NYPD officers falsely charged Peterson with 12 different crimes, but the grand jury heard Peterson's testimony and refused to indict him on any of the 12 charges. In 2008, Peterson sued New York City and certain NYPD officers for his injuries, and for falsely charging and prosecuting him. In 2009, Peterson settled his case against the civil defendants.

105.    In 2007, Kaleek Cross was walking down the street and was wrongfully arrested in Queens, New York. In Cross's civil suit he alleged that pursuant to his arrest, NYPD officers falsely charged Cross with multiple criminal possession of weapons charges. The officers created and provided false reports to support the false charges. Cross was prosecuted for these crimes and in 2008 was acquitted of all charges. In 2008, Cross sued New York City and certain NYPD officers for their unconstitutional conduct, and in 2009 the case was settled against the civil defendants.

106.    In 2011, Dejuan Battle was wrongfully convicted of criminal possession of a weapon in the second degree, based on an arrest that took place in Queens, New York. Battle asserted he was innocent and appealed his case. The appellate court's review found that "objective facts . . . cast doubt upon the officers' credibility." Based on this finding, in 2014, Battle's conviction was vacated and the indictment against him was dismissed.

107.    In 2012, Lyla Smith went to the 113th Precinct to learn about a raid that had been conducted at her boyfriend's residence located in Queens, New York. In Smith's civil suit she

alleged that while there, NYPD officers interrogated Smith, threatened her, humiliated her, and then arrested Smith by falsely claiming Smith possessed a controlled substance, drug paraphernalia, and ammunition. The prosecutor, however, dismissed the charges against Smith. In 2012, Smith sued New York City and certain NYPD officers, and in 2013, the case was settled against the civil defendants.

108.     Despite their knowledge of said policies, procedures, regulations, practices and customs, the supervisory and policymaking officers of Defendant CITY, as a matter of policy, perpetuated, or failed to take preventative or remedial measures to terminate said policies, procedures, regulations, practices and customs, did not discipline or otherwise properly supervise the individual personnel, such as the Individual Defendants, who engaged in them, did not effectively instruct, train and supervise such personnel with regard to the proper constitutional and statutory requirements in the exercise of their authority.  Instead the supervisory and policymaking officers of Defendant CITY sanctioned the policies, procedures, regulations, practices and customs described above, with a deliberate indifference to the effect of these policies, procedures, regulations, practices and customs upon the constitutional rights of persons and persons suspected of crimes.

109.     The aforesaid policies, procedures, regulations, practices and customs of Defendant CITY were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and laws of the United States and in causing him damages.

110.     Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates) has final responsibility for training, instructing, supervising and disciplining employees in his office regarding their conduct.

111.    Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising and disciplining employees of the NYPD with respect to their arrest and treatment of individuals charged with crimes.

112.    During all times material to this complaint, New York City's Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter conduct by his subordinates violating the aforementioned constitutional rights.

113.    At all relevant times New York City's Police Commissioner, personally or through his authorized delegates, had final authority to promulgate and implement policies and procedures, including policies and procedures on personal hiring, training and supervision, with respect to his Department's performance of its duties.

114.    At all relevant times New York City's Police Commissioner, personally or through his authorized delegates, had final authority and constitutes a City policymaker for whom Defendant CITY is liable with respect to the above-mentioned matters.


## JURY DEMAND

115.   Plaintiff hereby demands trial by jury of all issues properly triable thereby.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

b.      For compensatory damages in an amount to be determined;

24

c.      For punitive damages in an amount to be determined;

d.      For reasonable attorneys' fees, together with costs and disbursements, pursuant to §
        1988 and this Court's discretion;

e.      For pre-judgment interest as allowed by law; and

f.      For such other and further relief as this Court may deem just and proper.

DATED:      June 14, 2023
            New York, New York

                                            Yours, etc.


                                            _____
                                            By: ANTHONY CECUTTI
                                            (AC 5830)
                                            217 Broadway, Suite 707
                                            New York, New York 10007
                                            (212) 619-3730 (office)
                                            (917) 741-1837 (cell)


TO:     CITY OF NEW YORK
        c/o Corporation Counsel
        100 Church Street
        New York, New York 10007

        Hugo G. Ortega, Esq.
        Tanner & Ortega, LLP
        299 Broadway, Suite 1400
        New York, New York 10007
        *Counsel for Sasha Cordoba*

## **<u>ATTORNEY VERIFICATION</u>**

State of New York    )
                     )       ss.:
County of New York  )

      ANTHONY CECUTTI, ESQ., an attorney duly admitted to practice before the courts of this

district, affirms the following under penalty of perjury:

      I am an attorney who represents the Plaintiff in this action.  I have read the foregoing and

know the contents thereof; the same is true to my own knowledge, except as to matters therein stated

to be alleged on information and belief, and that as to those matters deponent believes them to be true.

The reason this verification is made by me and not by the plaintiff is that he resides outside of New

York County, the location of my offices.


                                                 _____
                                                 ANTHONY CECUTTI